AHMED KENYATTA EBRON *v.* COMMISSIONER
OF CORRECTION
(AC 29583)

DiPentima, Gruendel and Peters, Js.*

---

* The listing of judges reflects their seniority status on this court as of the date of oral argument.

Argued November 16, 2009—officially released April 27, 2010

*Michael Proto*, assistant state's attorney, with whom, on the brief, were *Michael Dearington*, state's attorney, *Linda N. Howe*, senior assistant state's attorney, and *David J. Vandrilla*, certified legal intern, for the appellant (respondent).

*Jennifer L. Bourn*, deputy assistant public defender, for the appellee (petitioner).

*Opinion*

DiPENTIMA, J. The respondent, the commissioner of correction,[1] appeals from the judgment of the habeas court granting the amended petition for a writ of habeas corpus filed by the petitioner, Ahmed Kenyatta Ebron. The petitioner had alleged that because his counsel failed to advise him to accept a very favorable plea

---

[1] At the time the petition was filed, the commissioner of correction was Theresa C. Lantz. She subsequently retired July 1, 2009.

offer he received ineffective assistance. On appeal, the respondent claims that the habeas court improperly (1) concluded that the petitioner's counsel was deficient, (2) concluded that the petitioner was prejudiced as a result of the deficiency and (3) ordered an incorrect remedy. We disagree and, accordingly, affirm the judgment of the habeas court.[2]

The following factual and procedural history is relevant to the issues raised on appeal. In docket number CR-02-12149, the petitioner had been convicted of possession of narcotics with intent to sell. On May 20, 2003, he was sentenced to eight years incarceration, suspended after twenty months, followed by a three year conditional discharge. In 2005, the state charged the petitioner with various criminal offenses in several informations. Specifically, in docket number CR-05-40965, the state charged the petitioner with two counts of attempt to commit assault of a police officer in violation of General Statutes §§ 53a-49 and 53a-167c, one count of possession of a dangerous weapon in violation of General Statutes § 53-206 and one count of disobeying the signal of a police officer in violation of General Statutes § 14-223 (a).[3] In docket number CR-05-41361, the state charged the petitioner with assault

---

[2] The petitioner argued, as an alternative to affirming the judgment, that this court should overrule our decision in State v. Jones, 96 Conn. App. 634, 638–40, 902 A.2d 17, cert. denied, 280 Conn. 919, 908 A.2d 544 (2006), which held that attempt to commit assault of a police officer is a legally cognizable offense. He further contends that his conviction of this charge cannot be sustained because it is not a legally cognizable offense, and, therefore, the habeas court improperly rejected his claim that his lawyer provided ineffective assistance of counsel for failing to challenge this charge. In light of our resolution of the respondent's appeal, we need not address this alternative to affirming the habeas court's judgment.

[3] On April 4, 2005, law enforcement officials learned that the petitioner would return to New Haven with a large quantity of narcotics. When officers attempted to place the petitioner in custody, the petitioner hit two police vehicles with his own vehicle in an attempt to escape. After a foot chase, officers apprehended the petitioner.

in the third degree in violation of General Statutes § 53a-61.[4] Finally, in docket number CR-05-42862, the state charged the petitioner with assault in the third degree in violation of § 53a-61.[5] On the basis of these charges, the petitioner was exposed to a period of incarceration of thirty-five years. The petitioner also faced a term of incarceration of six years and four months due to the revocation of the conditional discharge from his earlier conviction. His total exposure for all of the charges against him was forty-one years and four months of incarceration.

Attorney Richard Silverstein represented the petitioner at all relevant times. Silverstein discussed the charges against the petitioner with assistant state's attorney John P. Doyle, Jr. Doyle offered to recommend an effective sentence of six years incarceration if the petitioner pleaded guilty to a violation of the conditional discharge, at least one count of attempt to commit assault of a police officer and several misdemeanors. Silverstein informed Doyle that he had discussed the offer with the petitioner and that the petitioner had rejected it. The petitioner then entered a plea of not guilty to all of the charges.

Despite the petitioner's rejection, Doyle maintained the offer to the petitioner. At a pretrial conference on August 3, 2005, the state formally offered ten years incarceration, suspended after six years, with five years probation, in exchange for the petitioner's guilty plea. The court, *Alexander, J.*, indicated that the offer was appropriate, except that the proposed five years probation be a conditional discharge. Silverstein believed that

[4] The charge in docket number CR-05-41361 stemmed from an incident on April 10, 2005, involving the petitioner and Nicole Brown. Specifically, Brown alleged that the petitioner, with whom she had been in a relationship, choked and assaulted her.

[5] The charge in docket number CR-05-42862 stemmed from a drug related incident on December 7, 2004, involving the petitioner and Mary-Jo Dawson.

this offer of six years incarceration was too high. He conveyed the offer to the petitioner and told him that he had three options: (1) accept the plea bargain offered by the state, with the sentence recommendation of ten years incarceration, suspended after serving six years; (2) proceed to a hearing on the violation of conditional discharge; or (3) enter an "open plea," or one with no recommendation from Doyle, before Judge Damiani. Silverstein informed the petitioner that he "probably would not do much worse with Judge Damiani, or words to that effect." (Internal quotation marks omitted.) Silverstein never recommended that the petitioner accept the plea bargain offered by the state.

On August 31, 2005, a hearing was scheduled for determination of the petitioner's violation of the conditional discharge. Silverstein informed Judge Damiani that the petitioner instead elected to enter an open plea. The petitioner then pleaded guilty, pursuant to the *Alford* doctrine,[6] to violation of a conditional discharge for a felony, two counts of assault in the third degree and one count of attempt to commit assault of a police officer. Following a thorough canvass of the petitioner, Judge Damiani accepted his plea and informed him that he could receive a sentence of eighteen years and four months incarceration. The court ordered a presentence investigation (PSI) report; see General Statutes § 54-91a; and continued the matter for sentencing.

On December 5, 2005, the court sentenced the petitioner to six years incarceration for violation of the conditional discharge, a consecutive five years incarceration for attempt to commit assault of a police officer and ordered an unconditional discharge on the conviction for two counts of assault for a net effective sentence of eleven years. The petitioner unsuccessfully moved for review of the sentence.

---

[6] See *North Carolina* v. *Alford,* 400 U.S. 25, 37, 91 S. Ct. 160, 27 L. Ed. 2d 162 (1970).

The petitioner then commenced the present action for a writ of habeas corpus. In his second amended petition, filed October 24, 2007, he alleged that Silverstein provided ineffective assistance of counsel by failing to advise him properly with respect to the state's offer of six years incarceration. He further alleged that Silverstein provided ineffective assistance with respect to the charge of attempt to commit assault of a police officer.[7] Finally, the petitioner claimed that his guilty plea pursuant to the *Alford* doctrine was invalid and constituted a violation of his right to due process.

Following a trial, the habeas court issued a memorandum of decision, filed January 14, 2008, granting the petition for a writ of habeas court. Specifically, the court found that Silverstein had provided ineffective assistance of counsel with respect to the state's plea offer and that the petitioner was prejudiced thereby. The court rejected the petitioner's claims with respect to the charge of attempt to commit assault of a police officer and that his plea was invalid. As a remedy, the court directed the trial court to vacate the petitioner's plea and to afford him the opportunity to accept the state's offer of ten years incarceration, suspended after six years. If the petitioner were to accept this offer, he would then be resentenced in accordance with the plea bargain and the applicable law. The habeas court subsequently granted the respondent's petition for certification to appeal from the granting of the writ of habeas corpus. This appeal followed. Additional facts will be set forth as necessary.

Before addressing the respondent's specific claims, we begin by setting forth the relevant legal principles and our standard of review. "A criminal defendant is constitutionally entitled to adequate and effective assistance of counsel at all critical stages of criminal proceedings. . . . This right arises under the sixth and

---

[7] See footnote 2 of this opinion.

fourteenth amendments to the United States constitution and article first, § 8, of the Connecticut constitution. . . . As enunciated in *Strickland* v. *Washington*, [466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984)], this court has stated: It is axiomatic that the right to counsel is the right to the effective assistance of counsel. . . . A claim of ineffective assistance of counsel consists of two components: a performance prong and a prejudice prong. To satisfy the performance prong . . . the petitioner must demonstrate that his attorney's representation was not reasonably competent or within the range of competence displayed by lawyers with ordinary training and skill in the criminal law. . . . To satisfy the prejudice prong, a claimant must demonstrate that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. . . . The claim will succeed only if both prongs are satisfied." (Internal quotation marks omitted.) *Fernandez* v. *Commissioner of Correction*, 291 Conn. 830, 834–35, 970 A.2d 721 (2009); *Eastwood* v. *Commissioner of Correction*, 114 Conn. App. 471, 476–77, 969 A.2d 860, cert. denied, 292 Conn. 918, 973 A.2d 1275 (2009). Our Supreme Court has recognized that pretrial negotiations implicating the decision of whether to plead guilty is a critical stage, and, therefore, a defendant is entitled to adequate and effective assistance of counsel at this juncture of the criminal proceedings. *Copas* v. *Commissioner of Correction*, 234 Conn. 139, 153, 662 A.2d 718 (1995).

"In a habeas appeal, this court cannot disturb the underlying facts found by the habeas court unless they are clearly erroneous, but our review of whether the facts as found by the habeas court constituted a violation of the petitioner's constitutional right to effective assistance of counsel is plenary. . . . The habeas judge, as the trier of facts, is the sole arbiter of the

credibility of witnesses and the weight to be given to their testimony." (Internal quotation marks omitted.) *Lewis* v. *Commissioner of Correction*, 117 Conn. App. 120, 125, 977 A.2d 772, cert. denied, 294 Conn. 904, 982 A.2d 647 (2009). Finally, we note that "the issue of whether a criminal defendant had received effective assistance of trial counsel is a mixed question of law and fact; however, such a question also is subject to . . . plenary review." *Washington* v. *Commissioner of Correction*, 287 Conn. 792, 800, 950 A.2d 1220 (2008).

I

The respondent first claims that the habeas court improperly concluded that the petitioner's counsel was deficient. Specifically, she contends that Silverstein had conveyed the initial plea offer to the petitioner and that it was the sole decision of the petitioner to reject it.[8] Further, the respondent maintains that Silverstein's estimate of the sentence that would be imposed as a result of accepting the open plea bargain was reasonable and, therefore, did not constitute deficient performance. We are not persuaded.

The following additional facts are necessary for the resolution of the respondent's argument. Silverstein testified at the habeas trial that his practice focused on representing clients in criminal cases. After filing appearances in all of the petitioner's pending files, he engaged in pretrial negotiations with Doyle. Further discussion occurred before Judge Alexander that resulted in the formal offer to resolve all of the charges in exchange for ten years incarceration, suspended after serving six years. Silverstein recalled that the state's position "was pretty well entrenched" with respect to the sentence that the petitioner would have to serve.

---

[8] The court specifically found that Silverstein had conveyed the plea offer with a sentence recommendation of ten years incarceration, suspended after six years. This finding has not been challenged on appeal.

Silverstein believed that it was "high" and informed the petitioner of that opinion. He also provided the petitioner his options: (1) accept the state's offer, (2) attend a hearing on the violation of his conditional discharge or (3) enter a plea with no recommendation before Judge Damiani. Silverstein testified that the petitioner stated that he did not want to serve six years and that Silverstein believed that the petitioner would not "do much worse before Judge Damiani." Silverstein founded this opinion on his substantial experience with Judge Damiani and his sentencing policies.[9] Silverstein also stated that he believed the state's offer to be twelve to eighteen months too high. Silverstein later admitted that he had "mismanaged" the petitioner's case.

Silverstein further thought that the state's case regarding one of the assault charges was not that strong and that, as to the charge of assault of a police officer, he did not believe that an officer had been injured. He did acknowledge that the state had "ample evidence" with respect to the charge of a violation of conditional discharge and that there was "[z]ero" defense to the charge of attempt to commit assault of a police officer. Silverstein concluded his testimony by stating that had the petitioner accepted the state's plea offer, a PSI report would not have been ordered in this case.

Doyle was the next witness to testify at the habeas trial. He had believed that because the petitioner owed six years on the conditional discharge, that was the appropriate starting point for an acceptable plea agreement. Moreover, based on that fact and coupled with the strength of the state's case, and the petitioner's criminal record, Doyle was not willing to offer less than six years incarceration. Despite the initial rejection of

---

[9] During cross-examination, Silverstein testified that he had appeared before Judge Damiani "[h]undreds, if not thousands" of times for pretrial conferences and sentencings.

this offer, Doyle continued to keep the offer open. At the pretrial hearing before Judge Alexander, Doyle continued to insist on six years incarceration while Silverstein petitioned the court "vigorously" to lower the offer. Doyle indicated that Judge Alexander participated in the discussions and stated her belief that the state's offer was appropriate and that she would not lower or modify it. On the basis of both that pretrial before Judge Alexander and Doyle's seven years experience as a prosecutor, he testified that Judge Alexander would have approved the plea offer had the petitioner accepted it and sentenced him in accordance thereof. He further stated that had the offer been too high or low, Judge Alexander would have stated that on the record. Further, Doyle noted that, as a general matter, when the parties had reached an agreement, Judge Alexander would impose the agreed on sentence. He then testified unequivocally: "She would have [imposed the sentence of ten years incarceration, suspended after six years]. If [the petitioner] had indicated he would accept that offer, she would have imposed that day the ten after six and probably a five year conditional discharge." Finally, Doyle noted that the PSI report contained additional negative details regarding the petitioner's criminal history.

Attorney Michael Sheehan testified as a legal expert on behalf of the petitioner. He stated that a criminal defense lawyer should inform a client that it would be in the client's best interest to accept a favorable plea offer. Sheehan had reviewed the facts of the petitioner's circumstances at the time the first plea offer had been made. In his opinion, a reasonably competent attorney would have strongly recommended that the petitioner accept the offer of ten years incarceration, suspended after six years. The bases for this opinion included: (1) the petitioner's prior criminal record, including convictions for possession of narcotics, carrying a pistol, sale

of narcotics and breach of the peace, as well as being the subject of a protective order; (2) the petitioner's age at the time of his latest conviction; (3) the evidence and the strength of the state's case against the petitioner; (4) the commission of a crime shortly after being released on bail; and (5) the lower burden of proof with respect to the violation of a conditional discharge. Sheehan stated that, on the basis of the pending charges against him, the petitioner could expect to receive a sentence of six years incarceration and that he already "owe[d]" six years and four months on the conditional discharge. Given this situation, Sheehan concluded that it was not reasonably competent advice to suggest that the petitioner would receive a more favorable outcome by rejecting the state's offer and electing to enter an open plea before Judge Damiani.

Sheehan also discussed the advantages and disadvantages of a PSI report. He stated that while a PSI report may be beneficial in entering a plea with a capped sentence, such a report may expose details about a defendant resulting in a greater punishment in situations involving an open plea. Further, Sheehan noted that in an open plea situation, the fact that a PSI report will be completed is something to consider when making a recommendation to a client.

The habeas court concluded that Silverstein's performance was deficient in not recommending the acceptance of the plea bargain whereby the petitioner would receive ten years incarceration, suspended after six years. In support of this conclusion, the court noted that Silverstein should have known of the petitioner's egregious criminal record. Additionally, Silverstein should have known that by accepting an open plea, a PSI report would be prepared by the office of adult probation. The court further indicated that Silverstein should have known that this report would provide greater details of the petitioner's criminal history. Last,

the court observed that Silverstein should have known that there were no defenses to the principal charges of attempt to commit assault of a police officer and a violation of a conditional discharge.

"[P]lea bargaining is an integral component of the criminal justice system and essential to the expeditious and fair administration of our courts. . . . Commentators have estimated that between 80 and 90 percent of criminal cases in Connecticut result in guilty pleas, the majority of which are the product of plea bargains. . . . Thus, almost every criminal defendant is faced with the crucial decision of whether to plead guilty or proceed to trial. Although this decision is ultimately made by the defendant, the defendant's attorney must make an informed evaluation of the options and determine which alternative will offer the defendant the most favorable outcome. *A defendant relies heavily upon counsel's independent evaluation of the charges and defenses, applicable law, the evidence and the risks and probable outcome of a trial.*" (Citations omitted; emphasis added.) *Copas* v. *Commissioner of Correction,* supra, 234 Conn. 153–54. Indeed, the United States Court of Appeals for the Second Circuit has described the decision to plead guilty as "ordinarily the most important single decision in any criminal case." (Internal quotation marks omitted.) *Boria* v. *Keane,* 99 F.3d 492, 496–97 (2d Cir. 1996), cert. denied, 521 U.S. 1118, 117 S. Ct. 2508, 138 L. Ed. 2d 1012 (1997). It further stated that "[e]ffective assistance of counsel includes counsel's informed opinion as to what pleas should enter." (Internal quotation marks omitted.) Id. 497.

The habeas court heard evidence that the petitioner likely would be found to have violated his conditional discharge and that, at least as to the charges of attempt to commit assault of a police officer, the state's case was very strong. The petitioner's exposure on the violation of a conditional discharge alone was six years and

four months, a time period that exceeded the state's offer by four months. The petitioner faced an additional twelve years of incarceration for the attempt to commit assault of a police officer and the assault charges. Given the evidence presented in this case, we conclude that the court properly determined that Silverstein's performance was constitutionally deficient in failing to advise the petitioner to accept the state's plea offer with the sentence recommendation of ten years incarceration, suspended after six years. See, e.g., *United States* v. *Gordon*, 156 F.3d 376, 380 (2d Cir. 1998) (failure to advise client fully on whether plea appears desirable constituted ineffective assistance of counsel); *United States* v. *Day*, 969 F.2d 39, 43 (3d Cir. 1992) (advice that was so insufficient and incorrect that it undermined petitioner's ability to make intelligent decision whether to accept plea stated claim of ineffective assistance of counsel).

## II

The respondent next claims that the habeas court improperly concluded that the petitioner had been prejudiced as a result of Silverstein's deficient performance. Specifically, she argues that (1) the court used an improper standard to determine prejudice and (2) the petitioner failed to establish the required prejudice. We are not persuaded.

## A

The respondent argues that the habeas court used an improper standard to determine prejudice. Specifically, she contends that the habeas court should have used the prejudice standard established in *Hill* v. *Lockhart*, 474 U.S. 52, 59, 106 S. Ct. 366, 88 L. Ed. 2d 203 (1985), for assessing ineffective assistance when a defendant has chosen to plead guilty rather than the prejudice standard set forth in *Strickland* v. *Washington*, supra, 466 U.S. 668. We conclude that the court used the proper

standard to assess whether the petitioner had been prejudiced as a result of Silverstein's deficient performance.

In *Strickland*, the United States Supreme Court began its discussion regarding the prejudice prong by observing: "An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment. . . . The purpose of the Sixth Amendment guarantee of counsel is to ensure that a defendant has the assistance necessary to justify reliance on the outcome of the proceeding. Accordingly, any deficiencies in counsel's performance must be prejudicial to the defense in order to constitute ineffective assistance under the Constitution." (Citation omitted.) Id., 691–92. The court then reasoned that a criminal defendant must affirmatively prove prejudice and show that the attorney's errors actually had an adverse effect on the defense. Id., 693. Last, it noted that it was not enough to show that the errors had some conceivable effect on the outcome; id.; but instead that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id., 694.

In *Hill*, the United States Supreme Court held that "the two-part *Strickland* . . . test applies to challenges to guilty pleas based on ineffective assistance of counsel." *Hill* v. *Lockhart*, supra, 474 U.S. 58. In discussing the prejudice prong, it stated: "[This requirement] focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process. In other words, in order to satisfy the 'prejudice' requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Id., 59.

In the present case, the habeas court did not cite or refer to the modified *Hill* prejudice test. Instead, its discussion of the prejudice prong was limited to the following: "The prejudice resulting from this ineffective assistance is obvious. The petitioner would have accepted the offer of ten years suspended after six had Silverstein recommended it, and Judge Alexander would have imposed such a sentence. The petitioner thus lost an opportunity to receive a sentence considerably shorter than the one imposed."

The respondent argues that the habeas court should have applied the *Hill* standard for prejudice to (1) the petitioner's decision to reject the state's offer of ten years incarceration suspended after six years and (2) the petitioner's decision to submit to an open plea before Judge Damiani. Had the petitioner's claims focused on the decision to enter an open plea before Judge Damiani, then we agree that the *Hill* standard for prejudice would have applied. The issue in the present case, however, was whether Silverstein provided ineffective assistance of counsel with respect to the state's offer of six years incarceration. The *Hill* standard cannot apply because the petitioner did not plead guilty at the point of the ineffective assistance of counsel. The respondent's argument that the habeas court should have applied the *Hill* standard for prejudice, therefore, is fatally flawed. The *Hill* standard provides no guidance in determining whether the petitioner suffered prejudice as a result of the specific deficient performance alleged in the petition. Accordingly, we conclude that the habeas court used the appropriate standard, as set forth in *Strickland*, to determine whether the petitioner was prejudiced.

B

The respondent next claims that the petitioner failed to establish the required prejudice. Specifically, she

argues that (1) the sixth amendment is not implicated in the decision to reject a plea bargain offer, (2) the habeas court improperly concluded that the petitioner has been prejudiced and (3) the habeas court considered an improper factor in its determination of prejudice. We disagree with the respondent.

1

We first address the respondent's argument that the sixth amendment is not implicated in the decision to reject a plea bargain offer. Specifically, she contends that because the rejection of a plea offer does not " 'settle the accused's fate' " and that the proceedings subsequent to the rejection afforded the petitioner protection for any constitutional violation, there can be no sixth amendment violation in the present case.

At the outset, we note that the purpose of sixth amendment protection is to "ensure a fairly arrived at outcome of the criminal proceeding." *Purdy* v. *United States*, 208 F.3d 41, 48 (2d Cir. 2000). The respondent's restrictive view of the sixth amendment right to the effective assistance of counsel during the plea bargaining process has been rejected explicitly by the federal courts. The United States Court of Appeals for the Eighth Circuit has stated: "In doing so we recognized that a defendant, after rejecting the proposed plea bargain and receiving a fair trial, may still show prejudice if the plea bargain agreement would have resulted in a lesser sentence." *Engelen* v. *United States*, 68 F.3d 238, 241 (8th Cir. 1995); see also *Wanatee* v. *Ault*, 259 F.3d 700, 703–704 (8th Cir. 2001); *United States* v. *Day*, supra, 969 F.2d 43 (allegation that advice received was so incorrect and so insufficient that it undermined ability to make intelligent decision regarding plea offer stated sixth amendment claim); *Toro* v. *Fairman*, 940 F.2d 1065, 1068 (7th Cir. 1991), cert. denied, 505 U.S. 1223, 112 S. Ct. 3038, 120 L. Ed. 2d 907 (1992).

We find further support in a recent decision from the United States Court of Appeals for the Tenth Circuit. In *Williams* v. *Jones*, 571 F.3d 1086, 1088 (10th Cir. 2009), the petitioner was offered a ten year sentence in exchange for a guilty plea to second degree murder, which he rejected following his counsel's advice. Following his trial, the petitioner was sentenced to life imprisonment without the possibility of parole. Id. The Tenth Circuit, after noting that the plea bargaining process is a critical stage of the proceedings and that the sixth amendment applies to representation during the plea process, concluded that the petitioner had been prejudiced by counsel's deficient performance. Id., 1091. It expressly stated: "The fact that [the petitioner] subsequently received a fair trial (with a much greater sentence) simply does not vitiate the prejudice from the constitutional violation." Id.

In the present case, the respondent has failed to present a single case that has held expressly that the sixth amendment is not implicated by the decision to reject a plea offer. Given federal precedent holding to the contrary, and the lack of Connecticut case law addressing this issue, we conclude that the respondent's argument is without merit.

2

The respondent next claims that the habeas court improperly concluded that the petitioner has been prejudiced. Specifically, she contends that the evidence was insufficient to support the habeas court's finding that Judge Alexander would have accepted the petitioner's plea pursuant to the state's offer of ten years incarceration suspended after six years. We disagree with the respondent.

The following facts are necessary for our discussion. Doyle, the prosecutor handling the petitioner's various

files, testified regarding his experience with plea bargaining, both in general terms and specifically with the petitioner. At the August 3, 2005 judicial pretrial hearing, the offer was discussed. During this proceeding, Silverstein raised certain defenses, discussed the petitioner's background and asked "vigorously" for a lower offer. Doyle stated that Judge Alexander actively participated in the discussion, indicated that the state's offer was appropriate and that she would not adjust it. On the basis of both his experience as a prosecutor and the judicial pretrial itself, Doyle testified unequivocally that Judge Alexander would have accepted the plea agreement. The habeas court found that Judge Alexander would have imposed the sentence in accordance with the plea agreement that the petitioner would receive ten years, suspended after six years of incarceration.

"Habeas corpus is a civil proceeding." *Collins* v. *York*, 159 Conn. 150, 153, 267 A.2d 668 (1970). "It is well established that the burden of establishing grounds for relief in a habeas corpus proceeding rest[s] with the petitioner. . . . The petitioner, as the plaintiff in a habeas corpus proceeding, bears a heavy burden of proof. . . . When the factual basis of the court's decision is attacked, [w]e are called upon to determine whether the facts set out in the memorandum of decision are supported by the evidence or whether, in light of the evidence and the pleadings in the whole record, those facts are clearly erroneous. . . . Our function is not to examine the record to see if the trier of fact could have reached a contrary conclusion." (Citations omitted; internal quotation marks omitted.) *Morales* v. *Commissioner of Correction*, 99 Conn. App. 506, 509, 914 A.2d 602, cert. denied, 282 Conn. 906, 920 A.2d 308 (2007). Last, we note that "[i]n a case that is tried to the court . . . the judge is the sole arbiter of the credibility of witnesses and the weight to be given to their

specific testimony. . . . It is the right of the trier of fact to draw reasonable and logical inferences from the facts that it finds to be proved. . . . We cannot substitute our judgment for that of the habeas court." (Internal quotation marks omitted.) *Mozell* v. *Commissioner of Correction*, 51 Conn. App. 818, 823, 725 A.2d 971 (1999).

In the present case, Judge Alexander neither testified nor submitted an affidavit setting forth whether she would have accepted the plea arraignment between the petitioner and the state. Cf. *Medley* v. *Commissioner of Correction*, 235 Conn. 413, 416, 667 A.2d 549 (1995) (sentencing judge submitted affidavit detailing intent to sentence defendant in accordance with plea agreement). We note that one court has stated: "[W]e do not believe that [the habeas petitioner] was required to demonstrate a reasonable probability that the trial court would have approved the . . . plea arrangement. . . . We know of no case or statute that imposes such a requirement, and we think it unfair and unwise to require litigants to speculate as to how a particular judge would have acted under particular circumstances." (Citation omitted.) *Turner* v. *Tennessee*, 858 F.2d 1201, 1207 (6th Cir. 1988), vacated and remanded on other grounds, 492 U.S. 902, 109 S. Ct. 3208, 106 L. Ed. 2d 559, aff'd on other grounds, 726 F. Sup. 1113 (M.D. Tenn. 1989), aff'd, 940 F.2d 1000 (6th Cir. 1991), cert. denied, 502 U.S. 1050, 112 S. Ct. 915, 116 L. Ed. 2d 815 (1992);[10] but see *United States* v. *Day*, supra, 969 F.2d 44–45 (to prove prejudice, petitioner required to show that both he and court would have accepted plea); *Alvernaz* v. *Ratelle*, 831 F. Sup. 790, 792–93 (S.D. Cal. 1993) (same).

[10] The *Turner* court also stated that the state bore the burden of persuasion, clear and convincing evidence, that the sentencing judge would not have accepted the plea arrangement. *Turner* v. *Tennessee*, supra, 858 F.2d 1207.

Under the facts and circumstances of the present case, we conclude that the petitioner presented sufficient evidence to support the habeas court's finding that Judge Alexander would have accepted the plea agreement. The evidence of Doyle's general experience as a prosecutor and his experience with the specific facts of this case constituted the support for the court's finding. The petitioner, therefore, presented demonstrable realities rather than mere speculation to support the habeas court's finding. Cf. *Hopkins* v. *Commissioner of Correction*, 95 Conn. App. 670, 677, 899 A.2d 632, cert. denied, 279 Conn. 911, 902 A.2d 1071 (2006). Although it is possible, as the respondent argued in her brief, that Judge Alexander may have deferred a final decision on whether to accept the plea arrangement, there is no evidence to support that speculation. Accordingly, we conclude that the court's finding regarding prejudice was supported by the record and not clearly erroneous.

3

The respondent next claims that the habeas court improperly considered a factor in its determination of prejudice. Specifically, she argues that the critical inquiry was not whether Judge Alexander would have accepted the plea offer of ten years incarceration, suspended after six years, but whether she would have accepted that plea had she known the information contained in the PSI report that was later available to Judge Damiani.

The respondent's argument is premised on the United State's Supreme Court's decision in *Lockhart* v. *Fretwell*, 506 U.S. 364, 113 S. Ct. 838, 122 L. Ed. 2d 180 (1993). In that case, the court stated: "Thus, an analysis focusing solely on mere outcome determination, without attention to whether the result of the proceeding was fundamentally unfair or unreliable, is defective. To set aside a conviction or sentence solely because the

outcome would have been different but for counsel's error may grant the defendant a windfall to which the law does not entitled him." Id., 369–70. The respondent, in reliance on *Fretwell*, argues that the habeas court improperly considered only the fact that the petitioner received a longer sentence and did not examine whether the proceeding was fundamentally unfair or unreliable.

We note that the United States Supreme Court revisited the *Fretwell* decision in *Williams* v. *Taylor*, 529 U.S. 362, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000). In *Williams*, the court noted that the *Strickland* test "provides sufficient guidance for resolving virtually all ineffective-assistance-of-counsel claims . . . ." Id., 391. There are, however, certain situations where prejudice is presumed and others, where it would be "unjust to characterize the likelihood of a different outcome as legitimate 'prejudice.'" Id., 391–92. The court concluded that when the ineffective assistance of counsel deprives a defendant of a substantive or procedural right to which he or she is entitled under law, then a departure from the straightforward application of *Strickland* is unwarranted. Id., 393.

The question remains, therefore, whether the petitioner was deprived of a substantive or procedural right to which he was entitled. The respondent argues that no such right exists because the petitioner was not entitled to (1) a plea bargain and (2) the right to have a sentencing court "blind to his criminal past." With respect to the former, we are mindful that "there is no constitutional right to plea bargain . . . . *Weatherford* v. *Bursey*, 429 U.S. 545, 561, 97 S. Ct. 837, 51 L. Ed. 2d 30 (1977). Neither must [a] prosecutor reoffer a previously rejected plea offer. *United States* v. *Wheat*, 813 F.2d 1399, 1405 (9th Cir. 1987), aff'd, 486 U.S. 153, 108 S. Ct. 1692, 100 L. Ed. 2d 140 (1988) . . . ." (Citation omitted; internal quotation marks omitted.) *State* v. *Melendez*, 291 Conn. 693, 704, 970 A.2d 64 (2009). The issue in the

present case, however, is not whether the petitioner was entitled to receive a plea offer from the state; it is whether he was deprived of his constitutional right to the effective assistance of counsel with respect to a plea offer freely made by the state that would have been accepted by the petitioner and the court.

With respect to the respondent's second argument, we find guidance in *Glover* v. *United States*, 531 U.S. 198, 121 S. Ct. 696, 148 L. Ed. 2d 604 (2001). In *Glover*, the defendant's counsel failed to raise an issue regarding federal sentencing guidelines that increased the sentence by six to twenty-one months. Id., 201–202. The United States Court of Appeals for the Seventh Circuit had accepted the government's argument that the resulting sentencing increase would not constitute prejudice, in reliance on *Lockhart* v. *Fretwell*, supra, 506 U.S. 364. *Glover* v. *United States*, supra, 202. The United States Supreme Court concluded that the Seventh Circuit's reliance on *Fretwell* was improper Id., 203. "Authority does not suggest that a minimal amount of additional time in prison cannot constitute prejudice. *Quite to the contrary, our jurisprudence suggests that any amount of actual jail time has Sixth Amendment significance.*" (Emphasis added.) Id.

Although *Glover* addresses ineffective assistance of counsel with respect to a claim involving sentencing, we conclude that its rationale applies in the present case. The petitioner suffered the prejudice of five additional years to his term of incarceration as a direct result of Silverstein's deficient performance. See *Engelen* v. *United States*, supra, 68 F.3d 241. Further, the outcome of the proceedings was affected directly by the petitioner's counsel; see *United States* v. *Gordon*, supra, 156 F.3d 380; and the loss of a lesser sentence. We conclude, therefore, that the habeas court properly determined that the petitioner suffered prejudice as a result of Silverstein's deficient performance.

### III

The respondent's final claim is that the habeas court improperly ordered an incorrect remedy. Specifically, she argues that (1) the court improperly analogized the present case to *Santobello* v. *New York*, 404 U.S. 257, 92 S. Ct. 495, 30 L. Ed. 2d 427 (1971), (2) the remedy of specific relief was improper and (3) the court's order violated the doctrine of separation of powers. We are not persuaded.

The following additional facts are necessary for our discussion. In addressing the appropriate remedy for the violation of the petitioner's constitutional right to the effective assistance of counsel, the habeas court first noted that it had broad discretion to frame a remedy that was commensurate with the scope of the violation. See, e.g., General Statutes § 52-470 (a); *Brooks* v. *Commissioner of Correction*, 105 Conn. App. 149, 160, 937 A.2d 699, cert. denied, 286 Conn. 904, 943 A.2d 1101 (2008). It then stated that "[t]he present case is analogous to one arising under *Santobello* v. *New York*, supra, 404 U.S. 257. *Santobello* held that 'when a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled.' Id., 262. In the case of a *Santobello* violation, our appellate courts have approved a habeas court's order of specific performance of any broken promise by the state."

The court then noted that the petitioner had presented no claim or evidence of a broken promise by the state; nonetheless, he had been deprived of the benefit of a plea bargain that he and the court would have accepted but for the ineffective assistance of Silverstein. It further stated that the petitioner should have the opportunity to plead guilty to the state's offer of ten years, suspended after six years incarceration. It

reasoned that this remedy was (1) the most commensurate with the constitutional violation; (2) the one requested by the petitioner; and (3) not countered by the respondent with any equitable considerations that mitigated against renewal and acceptance of the state's original offer.

The habeas court, citing *Orcutt* v. *Commissioner of Correction*, 284 Conn. 724, 937 A.2d 656 (2007), and *Brooks* v. *Commissioner of Correction*, supra, 105 Conn. App. 162–63, concluded that it could not resentence the petitioner, as that authority belonged to the sentencing court. It observed that there "are several ways to structure the offer of ten years suspended after six in the case of multiple charges" and that the issue of whether the petitioner would receive probation or a conditional discharge had not been decided. "Accordingly, the [habeas] court will issue a writ of habeas corpus directing the trial court . . . to vacate the petitioner's plea, allow the petitioner the opportunity to accept the state's offer of ten years suspended after six years, and then, if the petitioner accepts the offer, to resentence the petitioner in accordance with the plea agreement based on the existing charges and the applicable law."[11]

A

We first address the respondent's argument that the habeas court improperly analogized the present case to *Santobello* v. *New York*, supra, 404 U.S. 257. Specifically, she argues that *Santobello* does not apply because the prosecutor did not breach the agreement or fail to fulfill a promise to the petitioner. Although we agree with

_____

[11] In *Orcutt* v. *Commissioner of Correction*, supra, 284 Conn. 743–44, our Supreme Court stated that while a habeas court may direct a trial court in accordance with the habeas court's findings, it is for the trial court to effectuate that relief. See also *Brooks* v. *Commissioner of Correction*, supra, 105 Conn. App. 163.

the respondent's discussion regarding *Santobello*, we disagree that the habeas court improperly used that case in its analysis.

Having reviewed carefully the habeas court's entire discussion regarding the appropriate remedy, we conclude that the citation to *Santobello* was not improper. The decision did not state that the present case was *controlled* by *Santobello*. It merely stated that, similar to cases in which a prosecutor breaks a promise to a defendant, the petitioner was deprived of the benefit of plea agreement that he would have received but for the ineffective assistance of counsel. More importantly, the habeas court cited to *United States* v. *Carmichael*, 216 F.3d 224, 227 (2d Cir. 2000), in which the Second Circuit Court of Appeals noted that a finding of ineffective assistance of counsel requires a remedy that is tailored specifically to the constitutional violation and one that restores a petitioner to the circumstances that would have existed had there been no constitutional error.

Accordingly, we conclude that the habeas court's reference to *Santobello* as a prelude to its analysis regarding the appropriate remedy was not improper.

### B

The respondent next argues that the remedy of specific relief was improper. She claims that "society's interest in the administration of justice is not served by ordering the prosecutor and the trial court now to turn a blind eye to the petitioner's criminal history and sentence him as though he is not the 'dangerous' individual that Judge Damiani ultimately determined him to be." We are not persuaded.

"[T]he writ of habeas corpus holds an honored position in our jurisprudence . . . [as] a bulwark against convictions that violate fundamental fairness. . . .

Pursuant to . . . § 52-470 (a), the court hearing any habeas petition shall . . . dispose of the case as law and justice require. In accordance with § 52-470, the [habeas] court, *much like a court of equity*, has considerable discretion to frame a remedy, so long as that remedy is commensurate with the scope of the constitutional violations which have been established." (Citation omitted; emphasis in original; internal quotation marks omitted.) *Brooks* v. *Commissioner of Correction*, supra, 105 Conn. App. 160; see also *Gaines* v. *Manson*, 194 Conn. 510, 528, 481 A.2d 1084 (1984).

Specific performance of a plea agreement is a constitutionally permissible remedy. *Mabry* v. *Johnson*, 467 U.S. 504, 510–11 n.11, 104 S. Ct. 2543, 81 L. Ed. 2d 437 (1984). The availability of specific performance, however, is not a matter of right but instead is dependent on an evaluation of equitable considerations, and such a determination is within the discretion of the court.[12] *State* v. *Rivers*, 283 Conn. 713, 734, 931 A.2d 185 (2007); see also *United States* v. *Day*, supra, 969 F.2d 47 (while second opportunity to accept plea agreement ought not be automatic, it does not follow that remedy of specific performance is never appropriate).

In *United States* v. *Morrison*, 449 U.S. 361, 365, 101 S. Ct. 665, 66 L. Ed. 2d 564 (1981), the United States Supreme Court stated: "Our approach has thus been to identify and then neutralize the [constitutional] taint by tailoring relief appropriate in the circumstances to assure the defendant the effective assistance of counsel and a fair trial." See also *United States* v. *Carmichael*,

---

[12] By use of the term "specific performance," we do not suggest or imply that the state in any way failed to perform according to a contract that it had entered into with the petitioner. The matter before us concerns the appropriate course of action to remedy the sixth amendment violation, that is, the specific performance of a plea bargain that would have been agreed to by the petitioner, the state and the court.

supra, 216 F.3d 227. The question before us, therefore, is whether the habeas court abused its discretion in determining that specific performance, i.e., directing that the petitioner be afforded an opportunity to accept the ten years incarceration, suspended after six years, would neutralize the constitutional violation of Silverstein's ineffective assistance of counsel.

In *Turner* v. *Tennessee*, supra, 858 F.2d 1203, the defendant was advised by counsel to reject a plea agreement of a two year sentence; following his conviction, he was sentenced to life imprisonment. The defendant successfully moved for a new trial on the basis of ineffective assistance of counsel. Id. The prosecution refused to offer the defendant a plea of less than twenty years. Id. After the completion of state proceedings, the defendant filed a petition for a writ of habeas corpus in federal court. Id. The District Court determined the appropriate remedy to be "a new plea hearing during which a rebuttable presumption of vindictiveness would attach to any plea offer made by the [prosecution] in excess of its original two-year offer." Id., 1204. The matter was appealed, and the finding of a constitutional violation was affirmed. Id., 1207.

With respect to the remedy, the defendant argued that his counsel's performance "cost him the opportunity to consider the . . . two-year plea offer with the constitutionally-guaranteed assistance of counsel . . . [and] [o]ne more fair trial, or even a series of them, would not necessarily revive the lost chance." (Internal quotation marks omitted.) Id., 1208. The Court of Appeals agreed and approved of the remedy crafted by the District Court. Id., 1208–1209.

In *Sanders* v. *Commissioner of Correction*, 83 Conn. App. 543, 545–46, 851 A.2d 313, cert. denied, 271 Conn. 914, 859 A.2d 569 (2004), the petitioner's attorney had failed to explain meaningfully a plea offer made by the

state. The petitioner rejected the offer and proceeded to a jury trial. Id., 545. Following his conviction, he received a greater sentence than the one that had been offered by the state. Id., 545–46. The habeas court determined that he had received ineffective assistance of counsel and ordered that the sentence be reduced to reflect the plea offer pending the petitioner's compliance with the terms of the state's offer. Id., 546–47. This court affirmed the decision of the habeas court. Id., 553.

Our Supreme Court recently approved of the specific performance remedy in *Sanders*. In *State* v. *Melendez*, supra, 291 Conn. 706, the court stated: "The petitioner in *Sanders*, who did not avail himself of a favorable plea offer solely because of trial counsel's constitutionally deficient representation, *surely was entitled to specific performance of that offer because no other relief would have been adequate to remedy the constitutional deprivation that he had suffered as a result of counsel's ineffective assistance.*" (Emphasis added.) See also T. Falzone, "Ineffective Assistance of Counsel: A Plea Bargain Lost," 28 Cal. W. L. Rev. 431, 449 (1991) (trend is to reverse defendant's conviction and to mandate that prosecutor reinstate original plea bargain).

We also are guided by the policy stated by the United States Supreme Court in *Kimmelman* v. *Morrison*, 477 U.S. 365, 379, 106 S. Ct. 2574, 91 L. Ed. 2d 305 (1986): "[T]he Constitution constrains our ability to allocate as we see fit the costs of ineffective assistance. The Sixth Amendment mandates that the State [or the government] bear the risk of constitutionally deficient assistance of counsel." Pursuant to *Kimmelman*, "even if one might perceive that the government's competing interest might be infringed by requiring that the original offer be reinstated, a contrary result would impermissibly shift the risk of ineffective assistance of counsel from the government to the [petitioner]." *United States* v. *Blaylock*, 20 F.3d 1458, 1469 (9th Cir. 1994).

In the present case, no relief other than the opportunity to accept the initial plea offer would remedy the petitioner's constitutional deprivation suffered as a result of Silverstein's ineffective assistance. The habeas court determined that its remedy was narrowly tailored and that it appropriately restored the petitioner to the position that would have existed but for the constitutional error. It stated that the respondent failed to present any equitable considerations that mitigated against renewal and acceptance of the original offer. The habeas court also noted that, given the facts and circumstances of the present case, the petitioner likely would be convicted of several charges and receive a sentence greater than six years, resulting in a worse position than if he actually had received effective assistance of counsel.

The respondent's argument that this remedy ignores the petitioner's criminal history, as detailed in the PSI that was conducted for the sentencing before Judge Damiani, fails to consider that, but for the ineffective assistance of counsel, the prosecution would not have obtained this information. At the habeas trial, Silverstein testified that had the petitioner accepted the state's plea offer and sentence of ten years incarceration suspended after six, a PSI would not have been ordered. Doyle also indicated that the PSI would not have occurred: "[W]e agreed that if [the petitioner] had entered the ten after six plea, *we would have waived the presentence investigation report and the state would have been satisfied with that particular plea* . . . ." (Emphasis added.) Finally, attorney Sheehan testified as an expert witness that a trial judge likely would not have ordered a PSI at the time of the events of this case.

We conclude, therefore, that the habeas court did not abuse its discretion in ordering the remedy for specific performance by directing the trial court to vacate the

petitioner's plea and to afford him the opportunity to accept the state's offer of ten years incarceration, suspended after six years.

## C

The respondent's final argument is that the habeas court's remedy violated the doctrine of separation of powers. Specifically, she contends that the remedy "to resurrect a lapsed plea offer over a prosecutor's objection . . . transfers control of the plea bargaining process from the executive branch to the judicial branch." She suggests that the proper remedy would have been to restore the criminal case to the docket and to allow the matter to proceed, with the possibility that the prosecution may extend a plea offer if it so elects. We disagree.

"Article second of the constitution of Connecticut, as amended by article eighteen of the amendments, provides in relevant part: The powers of government shall be divided into three distinct departments, and each of them confided to a separate magistracy, to wit, those which are legislative, to one; those which are executive, to another; and those which are judicial, to another. . . . We have recognized that [t]he primary purpose of [the separation of powers] doctrine is to prevent commingling of different powers of government in the same hands. . . . The constitution achieves this purpose by prescribing limitations and duties for each branch that are essential to each branch's independence and performance of assigned powers. . . . It is axiomatic that no branch of government organized under a constitution may exercise any power that is not explicitly bestowed by that constitution or that is not essential to the exercise thereof. . . . Nevertheless, we are mindful that the branches of government frequently overlap, and . . . the doctrine of the separation of powers cannot be applied rigidly . . . ." (Citations

omitted; internal quotation marks omitted.) *Washington* v. *Commissioner of Correction*, supra, 287 Conn. 826–27.

"The state's attorneys, who are responsible for prosecuting violations of the criminal laws of this state, are executive branch officials. . . . There can be no doubt that [t]he doctrine of separation of powers requires judicial respect for the independence of the prosecutor." (Citations omitted; internal quotation marks omitted.) *State* v. *Kinchen*, 243 Conn. 690, 699, 707 A.2d 1255 (1998). Accordingly, they have broad discretion as to prosecutorial functions. Id. As we observed in part II B 3 of this opinion, there is no constitutional right to a plea offer. *United States* v. *Wheat*, supra, 813 F.2d 1405; *State* v. *Melendez*, supra, 291 Conn. 704. The United States Supreme Court has stated that "[a] plea bargain standing alone is without constitutional significance; in itself it is a mere executory agreement which, until embodied in the judgment of a court, does not deprive an accused of liberty or any other constitutionally protected interest." *Mabry* v. *Johnson*, supra, 467 U.S. 507.

The present case, however, does not concern merely an offer made by a prosecutor. An offer was made that the petitioner had the right to accept, so long as it remained available, with the effective assistance of counsel. See *Williams* v. *Jones*, supra, 571 F.3d 1094. Under the facts and circumstances of this case, the habeas court properly concluded that Doyle's plea offer would have been accepted by both the petitioner and the court. The state freely bound itself to the offer of ten years incarceration, suspended after six years, and, but for the constitutional violation, that agreement would have been effectuated by the court's judgment. See *Miller* v. *Commissioner of Correction*, 29 Conn. App. 773, 777, 617 A.2d 933 (1992). It was more than a mere executory agreement offered at the discretion of

a member of the executive branch. Instead, the habeas court's remedy effectuated an agreement that all parties would have assented to and would have been incorporated into the trial court's judgment but for the ineffective assistance of counsel. See *Williams* v. *Jones*, supra, 1094. We conclude, therefore, that the separation of powers doctrine has not been violated in this case.

The judgment is affirmed.

In this opinion the other judges concurred.

---

* The listing of judges reflects their seniority status on this court as of the date of oral argument.