******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

JOSE MELENDEZ *v.* COMMISSIONER
OF CORRECTION
(AC 34463)

Beach, Keller and Pellegrino, Js.

*Argued March 12—officially released July 1, 2014*

(Appeal from Superior Court, judicial district of
Tolland, Cobb, J.)

*Christopher DeMatteo*, assigned counsel, for the
appellant (petitioner).

*Lisa A. Riggione*, senior assistant state's attorney,
with whom, on the brief, were *Michael Dearington*,
state's attorney, and *Adrienne Maciulewski*, deputy
assistant state's attorney, for the appellee (respondent).

*Opinion*

PER CURIAM. The petitioner, Jose Melendez, appeals following the denial of his petition for certification to appeal from the judgment of the habeas court denying his revised, amended petition for a writ of habeas corpus. On appeal, the petitioner claims that the habeas court (1) abused its discretion in denying his petition for certification to appeal, and (2) improperly determined that his trial counsel, Glenn M. Conway (counsel), provided effective assistance. We conclude that the court properly denied certification to appeal and, accordingly, we dismiss the petitioner's appeal.

The following facts and procedural history are relevant to this appeal. In the fall of 2004, the federal Drug Enforcement Agency (DEA) and the statewide narcotics task force conducted a joint investigation into alleged narcotics trafficking at the Fireside Restaurant in New Haven. As part of that investigation, investigators used a then confidential source, Jose Franco, to make controlled buys of narcotics at the restaurant. Franco was outfitted with a surveillance device designed to capture audio and video of any drug transactions, and to transmit wirelessly the audio and video to a nearby surveillance vehicle where the transmission would be recorded onto an eight millimeter videotape.

Two of Franco's recorded controlled buys involved exchanges with the petitioner. On October 8, 2004, Franco entered the restaurant with $100, provided to him by the investigators, and instructions to attempt to purchase narcotics from anyone who was selling them. While in the restaurant's restroom, Franco encountered the petitioner, who he knew was a drug dealer. Franco told the petitioner that he wanted to purchase some cocaine. The petitioner gave Franco a small bag containing white powder in exchange for $20. After making the purchase, Franco left the restaurant and immediately met with the investigators, who took the remaining $80 along with the bag containing white powder that Franco had purchased from the petitioner. The powder later field tested positive for cocaine. On October 14, 2004, a substantially similar transaction occurred between Franco and the petitioner in the restaurant's restroom, where Franco again purchased from the petitioner a $20 bag of white powder that field tested positive for cocaine.

The petitioner was arrested on December 17, 2004, and charged with various narcotics offenses. In April or May, 2005, counsel for the petitioner was permitted to view the eight millimeter videotape on which the two transactions originally were recorded. In December, 2005, DEA investigators provided a copy of the eight millimeter videotape to the state, and the state immediately provided a copy to counsel.

At a pretrial hearing on December 21, 2005, the parties

and the trial court discussed the status of the case, including ongoing plea negotiations. Counsel informed the court that the petitioner himself had not yet viewed the video of the transactions on October 8 and 14, 2004, and arrangements were made for the petitioner to view the video that same day.[1] The assistant state's attorney indicated that the state had not yet revealed the identity of its confidential source and explained to the petitioner that the state's outstanding initial plea offer of "five years flat to serve" would be withdrawn immediately if the state was required to disclose the confidential source's identity to the petitioner. At that same time, the assistant state's attorney told the petitioner that if he wanted to enter a plea after the state disclosed the confidential source's identity, he would have to enter an "open" guilty plea, whereby the sentence would be imposed in the discretion of the court. The assistant state's attorney indicated to the petitioner that, in light of the charges pending, the sentence would likely fall somewhere between a minimum of eight years incarceration and a maximum of twenty-five years incarceration.

Sometime after viewing a video home system (VHS) videotape made from the eight millimeter video footage of the October 8 and 14, 2004 transactions, the petitioner rejected the state's initial plea offer of five years to serve and elected to proceed to trial. The state then advised the petitioner of Franco's identity. Following jury selection, the state provided the petitioner with a digital video disc (DVD) that, according to the state, had been created from the original eight millimeter videotape of the October 8 and 14, 2004 transactions. The DVD contained eight separate video segments, four that depicted the transaction of October 8 and four that depicted the transaction of October 14. Of the four video segments for each transaction, one was an exact duplicate of the surveillance footage without any modifications, one contained the same footage slowed to 10 percent of normal speed, one comprised enhanced footage at normal speed, and one contained enhanced footage slowed to 10 percent of normal speed. Upon receiving the DVD, the petitioner made an oral motion for specific performance of the last plea offer extended by the state prior to the disclosure of Franco's identity and the DVD, that is, the arrangement whereby the petitioner would enter an "open" guilty plea and be subject to a term of incarceration between eight and twenty-five years.[2] The court, *Levin, J.*, denied the motion, finding that counsel previously was afforded the opportunity to review the same videotape the state used to make the DVD, and that both the videotape and the DVD depicted the same transactions.

The case proceeded to trial, and the petitioner was found guilty by a jury of two counts of sale of narcotics by a person who is not drug-dependent in violation of General Statutes § 21a-278 (b), and two counts of sale

of narcotics within 1500 feet of a licensed day care center in violation of General Statutes § 21a-278a (b). The trial court rendered judgment in accordance with the jury verdict and sentenced the petitioner to a total effective term of thirty years incarceration. Our Supreme Court affirmed the petitioner's conviction. *State* v. *Melendez*, 291 Conn. 693, 719, 970 A.2d 64 (2009).

The petitioner filed a revised, amended petition for a writ of habeas corpus, alleging that counsel rendered ineffective assistance during the pretrial proceedings and the trial of the case. The petitioner's primary claims, and those relevant to this appeal, related to counsel's investigation and advice regarding the state's initial plea offer of five years to serve.[3] The habeas court viewed the various video recordings—the eight millimeter videotape, the VHS tape viewed by the petitioner, and the enhanced DVD—depicting the transactions between Franco and the petitioner, and noted that "these videotapes are all incriminating . . . regardless of their quality." The court, *Cobb, J.*, in an oral memorandum of decision, then concluded that the petitioner had failed to demonstrate that counsel's performance was deficient and, accordingly, denied the petition for a writ of habeas corpus.[4] See *Strickland* v. *Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). Thereafter, the petitioner requested certification to appeal. The court denied that petition. This appeal followed.

"In a habeas appeal, although this court cannot disturb the underlying facts found by the habeas court unless they are clearly erroneous, our review of whether the facts as found by the habeas court constituted a violation of the petitioner's constitutional right to effective assistance of counsel is plenary. . . . Faced with a habeas court's denial of a petition for certification to appeal, a petitioner can obtain appellate review of the dismissal of his petition for habeas corpus only by satisfying the two-pronged test enunciated by our Supreme Court in *Simms* v. *Warden*, 229 Conn. 178, 640 A.2d 601 (1994), and adopted in *Simms* v. *Warden*, 230 Conn. 608, 612, 646 A.2d 126 (1994). First, [the petitioner] must demonstrate that the denial of his petition for certification constituted an abuse of discretion. . . . Second, if the petitioner can show an abuse of discretion, he must then prove that the decision of the habeas court should be reversed on the merits. . . .

"To prove an abuse of discretion, the petitioner must demonstrate that the [resolution of the *underlying claim* involves issues that] are debatable among jurists of reason; that a court could resolve the issues [in a different manner]; or that the questions are adequate to deserve encouragement to proceed further." (Emphasis added; internal quotation marks omitted.) *Osuch* v. *Commissioner of Correction*, 111 Conn. App. 135, 137, 957 A.2d 887, cert. denied, 289 Conn. 957, 961 A.3d

420 (2008). "In determining whether there has been an abuse of discretion, every reasonable presumption should be given in favor of the correctness of the court's ruling . . . [and] [r]eversal is required only where an abuse of discretion is manifest or where injustice appears to have been done." (Internal quotation marks omitted.) *Perry* v. *Commissioner of Correction*, 131 Conn. App. 792, 796, 28 A.3d 1015, cert. denied, 303 Conn. 913, 32 A.3d 966 (2011).

"To prevail on a claim of ineffective assistance of counsel, a habeas petitioner generally must show that counsel's performance was deficient and that the deficient performance prejudiced the defense. See *Strickland* v. *Washington*, [supra, 466 U.S. 687]." (Internal quotation marks omitted.) *Perry* v. *Commissioner of Correction*, supra, 131 Conn. App. 796. "[E]ffective assistance of counsel includes counsel's informed opinion as to what pleas should enter." (Internal quotation marks omitted.) *Ebron* v. *Commissioner of Correction*, 120 Conn. App. 560, 572, 992 A.2d 1200 (2010), rev'd in part on other grounds, 307 Conn. 342, 53 A.3d 983 (2012), cert. denied sub nom. *Arnone* v. *Ebron*,      U.S.    , 133 S. Ct. 1726, 185 L. Ed. 2d 802 (2013); see also *Copas* v. *Commissioner of Correction*, 234 Conn. 139, 154, 662 A.2d 718 (1995) ("[A]lmost every criminal defendant is faced with the crucial decision of whether to plead guilty or proceed to trial. Although this decision is ultimately made by the defendant, the defendant's attorney must make an informed evaluation of the options and determine which alternative will offer the defendant the most favorable outcome.").

The petitioner claims that his counsel provided ineffective assistance because he did not inform the petitioner of information that would have led him to accept the favorable five year plea offer—that is, the petitioner claims that counsel did not tell him that the original eight millimeter videotape, which he had viewed earlier, contained more incriminating footage than the edited VHS videotape that counsel and the petitioner viewed in December, 2005. The petitioner claims that counsel also provided ineffective assistance by failing to investigate adequately the video evidence in the state's possession—that is, counsel erred in not verifying that the videotape the petitioner viewed in December, 2005, was an exact copy of the original eight millimeter videotape and/or erred in not notifying the petitioner that the video he was shown in December, 2005, was incomplete because it did not depict the drugs for money exchange contained in the original eight millimeter videotape.

After a thorough review of the record and briefs, we agree with the habeas court that counsel's investigation into the video evidence was adequate and reasonable and that counsel effectively provided the petitioner with adequate information and advice upon which the petitioner could make an informed decision as to whether

he should accept the state's initial five year plea offer. The court's conclusion that counsel provided effective assistance is supported by evidence in the record establishing that: (1) counsel viewed the original eight millimeter videotape, which depicted evidence incriminating the petitioner, and advised the petitioner of its incriminating nature; (2) counsel spoke with the petitioner regarding the plea offer on numerous occasions, and explained to the petitioner the elements of the crimes he was charged with and the strength of the state's case in relation to available and potentially available evidence, including the effect of potential testimony by Franco and the videotape's ability to corroborate that testimony; and (3) counsel specifically advised the petitioner to accept the plea offer. That the petitioner chose to draw his own conclusions as to the likelihood that Franco would testify, the credibility of Franco's testimony, and the incriminating nature of the video evidence depicting the transactions between Franco and the petitioner, does not alter our conclusion that counsel's assistance was effective.[5]

The petitioner has not demonstrated that the issues he has raised in the petition for certification to appeal are debatable among jurists of reason, that a court could resolve those issues differently or that the questions raised deserve encouragement to proceed further. See *Lozada* v. *Deeds*, 498 U.S. 430, 431–32, 111 S. Ct. 860, 112 L. Ed. 2d 956 (1991); *Simms* v. *Warden*, supra, 230 Conn. 616. Consequently, we conclude that the petitioner has failed to demonstrate that the court abused its discretion in denying his petition for certification to appeal. See, e.g., *Coleman* v. *Commissioner of Correction*, 108 Conn. App. 836, 838, 949 A.2d 536, cert. denied, 289 Conn. 913, 957 A.2d 876 (2008).

The appeal is dismissed.

[1] The court explained to the petitioner that he would be permitted to view a copy of the videotape then in possession of the state, but that the state might be able to obtain a videotape of better quality for trial.

[2] On direct appeal from his criminal conviction, the petitioner claimed that "the state's allegedly tardy disclosure of the DVD violated his federal due process right to what he characterizes as a 'meaningful' plea bargain. The remedy to which the [petitioner] claim[ed] he [was] entitled for this alleged constitutional violation [was] the opportunity to accept the last plea offer that the state extended to him, that is, a plea arrangement pursuant to which the [petitioner] would receive a sentence 'in the eight to twenty-five year range.' " (Footnote omitted.) *State* v. *Melendez*, 291 Conn. 693, 703–704, 970 A.2d 64 (2009). Our Supreme Court held that the petitioner's claim lacked merit.

Here, the petitioner claims ineffective assistance of counsel regarding the state's initial plea offer of five years to serve. The remedy to which the petitioner now claims he is entitled is the opportunity to accept the state's *initial* plea offer of five years to serve.

[3] The petitioner claimed, among other reasons, that counsel provided ineffective assistance because (1) counsel failed to investigate the charges brought against the petitioner, (2) at the time when the petitioner was considering whether to plead guilty or to go to trial, counsel failed to provide the petitioner with information regarding the incriminating nature of the original eight millimeter videotape, which counsel viewed several months earlier, (3) counsel failed to revisit and to review carefully the videotape, which showed the petitioner engaged in a sale with Franco so that counsel could provide the petitioner with more accurate information regarding his

possible exposure if he went to trial vis-á-vis entering a plea agreement, and (4) counsel failed to advise and to counsel the petitioner adequately regarding the state's plea offers.

[4] The habeas court concluded that "the petitioner [did] not [meet] his burden to prove that [counsel's] advice regarding the plea offer of five years fell below [the objective standard of reasonableness], either with respect to the investigation or with respect to the actual advice provided." The habeas court's conclusion that counsel's investigation was effective was based on its finding that counsel had viewed "the eight millimeter [video-tape], which was the original tape, and that, from all accounts, was incriminating evidence," and explained the incriminating nature of that videotape to the petitioner. The habeas court's conclusion that counsel provided effective assistance upon which the petitioner could make an informed decision as to whether to accept the plea offer was based on its findings that (1) counsel had spoken to the petitioner about the five year plea offer on a "number of occasions," "specifically recommended to the petitioner that he accept the five year offer," and "advised the petitioner that if he rejected it, it would be withdrawn if the state revealed the name of the cooperating witness and would not be revived," and (2) counsel explained to the petitioner that "if the state revealed the name of the confidential witness . . . that would be a signal that the confidential witness would be available to testify against the petitioner at trial . . . [and] [i]f the confidential witness testified against the petitioner at trial, the video would also come in, and the petitioner would likely be convicted."

[5] The habeas court found: "Although the petitioner wishes the [habeas court] to focus all its energies on this video evidence, the focus of . . . [counsel's] pretrial discussions with the petitioner and on the case generally was on the confidential informant . . . Franco, and whether or not he would testify at trial . . . and what, in fact, he would say. While the video was important, it was merely corroborating of the testimony of [Franco]. And . . . [counsel] testified that in his experience, if the state did not wish to reveal the cooperating witness or the cooperating witness would not be available for testimony, that the case would be nolled or dismissed, and the state would not pursue it. . . . [Counsel] . . . had defended many defendants in drug sale cases in New Haven . . . [and] was very familiar with how the state handled [drug sale cases] and how offers were viewed when cooperating witnesses or confidential informants were involved. . . ."

The habeas court further found that the petitioner, after viewing the video, rejected the plea offer "not because he did not believe the tape incriminated him, as he said [in his testimony before the habeas court], but rather because he believed that the cooperating witness would be too afraid to be identified and [to] testify at trial, and, therefore would not appear. If he didn't appear to testify, the case would be nolled or dismissed. The petitioner's gamble did not pay off. . . . The petitioner now claims that he was not properly advised regarding the plea offer of five years."

---