******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

APPENDIX

SIDNEY PARKER *v.* COMMISSIONER
OF CORRECTION*

Superior Court, Judicial District of Tolland
File No. CV-12-4004958
Memorandum filed February 19, 2015

*Proceedings*

Memorandum of decision on petitioner's petition for writ of habeas corpus. *Petition denied.*

*Cheryl A. Juniewic*, for the petitioner.

*Kelly A. Masi*, senior assistant state's attorney, for the respondent.

*Opinion*

BRIGHT, J.

I

## INTRODUCTION

The petitioner, Sidney Parker, brings this petition for a writ of habeas corpus, claiming that his trial counsel's legal representation and advice regarding his decision to plead guilty under the *Alford* doctrine was ineffective.[1] By way of relief, the petitioner seeks an order vacating his conviction and allowing him to withdraw his plea.

In count one of his amended petition, the petitioner claims that his trial counsel, Attorney Michael Dolan, was ineffective in that he: (1) failed to adequately advise the petitioner of the elements of the charges to which he was pleading guilty; (2) failed to adequately advise the petitioner as to any defenses and/or mitigating circumstances, including intoxication; (3) failed to advise the petitioner of the evidence and witnesses the state would likely rely upon; (4) failed to adequately investigate the petitioner's case; (5) failed to adequately consult with the petitioner regarding plea negotiations and/or exercised undue influence over the petitioner during those negotiations; and (6) failed to negotiate a better plea deal for the petitioner.[2]

This court held a trial on the merits of the petition on September 10, 2014. The petitioner produced three witnesses, himself, Attorney Dolan, and Dr. Kelly Johnson-Arbor, who testified as to how the petitioner's mental state was affected by smoking PCP prior to the events that led to his conviction. The respondent, the Commissioner of Correction, called two witnesses, Eric Brown, who testified that the petitioner made incriminating statements to him, and Attorney Terri L. Sonnemann, the assistant state's attorney who prosecuted the petitioner and negotiated his plea agreement with Attorney Dolan. The court also received as exhibits the transcripts from the petitioner's court appearances, including when he entered his plea and was sentenced, the court record regarding the petitioner's criminal case, and correspondence from the petitioner and Brown. The petitioner also filed a posttrial brief.

II

## FINDINGS OF FACTS

Based on the evidence presented, the court finds the following facts. On December 20, 2009, the petitioner was arrested and charged in the judicial district of Litchfield with nine crimes arising from his alleged actions on the night of December 19 into the early morning hours of December 20 in Torrington. The charges included attempted sexual assault in the first degree, unlawful restraint the first degree, strangulation in the

third degree, assault in the third degree, interfering with an officer, and four different drug charges.

On August 10, 2010, with his case on the firm jury list, the petitioner pleaded guilty under the *Alford* doctrine to one count of attempt to commit sexual assault in the first degree in violation of General Statutes §§ 53a-49 and 53a-70. As set forth by Attorney Sonnemann, had the case gone to trial, the state was prepared to prove the following facts. "This event occurred on or about [December 20, 2009] in the town of Torrington at about 1:40 in the morning when Torrington police did receive a 911 call from the complainant's sister. . . . And the 911 call contains the complainant's sister screaming that the [petitioner] is trying to rape her sister.

"The complainant did give a statement to the police, indicated that [the petitioner] had gone to her apartment, they were watching a movie upstairs because the cable box was broken downstairs. While they were upstairs, [the petitioner] began to tell the complainant that he loved her, that she was his soulmate, his Oreo. He then held her on the bed by her neck and was trying to remove her pants. There was a struggle. The complainant's sister at this point jumps on the [petitioner] to try and get him off of her. She manages to do that. The complainant flees into a hallway. There is another struggle at that point involving the complainant's sister trying to protect the complainant. [The petitioner] manages to get the complainant's sister off of him, grabs the complainant's panties, rips them off, he strikes the complainant's sister and pursues the complainant. [The complainant] goes to the neighbor's. . . .

"The [petitioner] has, at this point, grabbed the complainant again, has her outside against a wall, tries to rip her shirt and bra off. He strikes the complainant's sister again. Finally, the complainant is pleading with the [petitioner] that he doesn't need to rape her, please calm down. He does that. The complainant flees into an apartment and calls 911 again. Police arrive and the [petitioner] is taken into custody." Respondent's Exh. B, August 10, 2010 transcript, pp. 3–4.

After reciting these facts, Attorney Sonnemann noted that "[t]here is some evidence that the [petitioner] was high on PCP at the time of the alleged offense, but, nonetheless, the state believes it could have proven this beyond a reasonable doubt. And the attempted sex, one, Judge, is a general intent crime." Id., at p. 4.

The court then canvassed the petitioner. During that canvass, the petitioner acknowledged that: (1) he had enough time to talk to Attorney Dolan about his decision to plead guilty; (2) he was satisfied with Attorney Dolan's representation; (3) he went over with Attorney Dolan all of the evidence that could be used against the petitioner at trial; (4) he went over with Attorney

Dolan the elements of the offense, as well as the maximum and mandatory minimum sentences for the offense. Id., at pp. 4–5. The petitioner also acknowledged that he would have to register for life as a sex offender. Id., at p. 5. The petitioner also acknowledged that his guilty plea was not the product of any threats or promises. Id., at p. 8.

While the court acknowledged the parties' agreement to a sentence of eight years of incarceration, followed by seven years of special parole, the matter was continued so that the petitioner could coordinate the running of his sentence with a four year sentence he was going to receive out of Waterbury on a drug charge and a violation of probation. By agreement, the sentences on both cases would run concurrently. Consequently, on September 3, 2010, the petitioner returned to court to be sentenced on the sexual assault charge, to which he had pleaded guilty. Prior to the court's imposing sentence, Attorney Sonnemann disclosed to the court that on the Friday before the petitioner pleaded guilty, the complainant had been arrested on "a matter which could be used by defense counsel for purposes of cross-examination had the matter proceeded to trial." Id., September 3, 2010 transcript, p. 3. While the record reflects that the petitioner may have known of the arrest prior to entering his guilty plea, Attorney Sonnemann did not learn of it until after the petitioner pleaded guilty. In any event, the petitioner was notified on the record of his right to file a motion to vacate his guilty plea. He chose instead to be sentenced so that the sentence in this case and his Waterbury case could begin running at the same time.[3] Pursuant to the parties' agreement, the trial court sentenced the petitioner to eight years of incarceration, followed by seven years of special parole. The state entered nolles on the other eight counts with which the petitioner was charged.

The petitioner's plea agreement was the product of protracted negotiations between Attorney Dolan and Attorney Sonnemann. The petitioner retained Attorney Dolan shortly after he was arrested. Attorney Dolan had previously represented the petitioner on a sexual assault charge in the judicial district of Waterbury. After a trial to a jury in that matter, the petitioner was found not guilty.

After being arrested and before retaining Attorney Dolan, the petitioner was briefly held on a $250,000 bond. During that time, the petitioner shared a cell with Brown, who was facing charges in the judicial district of Waterbury. In late December/early January, Brown sent a letter to "Michael—Chris," claiming that the petitioner had made incriminating statements to Brown about the events in Torrington. Petitioner's Exh. 3.[4] In particular, the letter stated that the petitioner "told [Brown] how [the petitioner] attacked the two girls at the house and what happened." Id. In the letter, Brown

offered his full cooperation if someone would "put a word to the prosecutor about getting me the help I need." Id. Brown testified credibly in this matter about what the petitioner told him while they were incarcerated together. The petitioner told Brown that he was with two sisters. The petitioner said that he attacked one of the sisters and that the other jumped on the petitioner's back to try to help her sister. In the process, one of the sisters had a tooth knocked out. The petitioner told Brown that he attacked the one sister because he thought one of them had taken some money or drugs from him. The petitioner also told Brown that it was snowy and icy the night he was arrested, that he ran outside with half his clothes, and that the police tased him. The petitioner also told Brown that he owned a barber shop and that he owned dogs. There was no evidence that Brown could have received any of the foregoing information from anyone other than the petitioner. Furthermore, other evidence established that the petitioner and Brown discussed their cases with each other while incarcerated together. The petitioner acknowledged that he recommended Attorney Dolan to Brown. He told Brown that Attorney Dolan had previously represented him on the earlier sexual assault charge on which the petitioner was found not guilty. Consequently, Brown retained Dolan to represent him on his pending criminal charges in Waterbury.

The petitioner did eventually post the $250,000 bond and was released. However, shortly thereafter, the petitioner was incarcerated on the drug and violation of probation charges out of Waterbury and did not post bail. On March 16, 2010, the petitioner's bond was increased by $100 on his Litchfield case, so that he could earn pretrial jail credit on that matter.

The evidence established that by May 25, 2010, Attorney Dolan was representing both the petitioner and Brown. On that date, the state gave Attorney Dolan a copy of Brown's letter. Brown showed the petitioner the letter during a court appearance that day. Concerned that one of his clients was offering to provide evidence against another client, Attorney Dolan discussed the potential conflict of interest with the petitioner. The petitioner was steadfast in his decision to keep Attorney Dolan as his counsel for the Litchfield case. To make that clear, the petitioner executed a handwritten waiver that Attorney Dolan drafted. Petitioner's Exh. 2. That waiver, dated May 25, 2010, reads as follows. "I am aware of the letter Eric Brown wrote. I understand this could create a conflict. At this time, I am waiving the potential conflict. I understand I can consult a lawyer regarding this issue." Id.

At the time that Attorney Dolan and the petitioner became aware of Brown's letter, Attorney Dolan and Attorney Sonnemann had already been involved in plea negotiations. The state's first offer was a sentence of

fifteen years, execution suspended after eight years of incarceration, followed by twenty years of probation. The most troubling part of the offer to the petitioner was the twenty years of probation. Consequently, after further negotiations with Attorney Sonnemann, Attorney Dolan was able to secure a second offer of eight years of incarceration, followed by seven years of special parole. By substituting special parole for probation, the petitioner would only be exposed to incarceration beyond his initial eight year term for no more than seven years. In addition, every day of special parole the petitioner successfully completed would reduce his exposure to future incarceration by one day. The same would not be true on probation, where the petitioner would still be exposed to seven years of incarceration if he violated his probation any time during the twenty year probationary period.

At a hearing on June 8, 2010, with the petitioner present, Attorney Sonnemann informed the court that the parties had been involved in plea negotiations, an offer and counteroffer had been made, and that the state had made a final offer. Respondent's Exh. B, June 8, 2010 transcript, p. 2. While the transcript from the hearing does not describe the offer, the recollections of Attorney Dolan, the petitioner and Attorney Sonnemann were consistent that the state's final offer was eight years, followed by seven years of special parole. Attorney Sonnemann reported that the petitioner wanted time to consider the offer, and the matter was continued to July 7 for the petitioner to accept or reject the offer.

At that hearing, counsel also discussed with the court the potential conflict Attorney Dolan faced because he represented both the petitioner and Brown. The trial court expressed its concerns that if the petitioner's matter went to trial Attorney Dolan would have a difficult time cross-examining his other client, Brown. The court further informed the petitioner that if the case went to trial, Attorney Dolan would likely have to withdraw from representing him. The petitioner told the court that he understood the conflict, but wanted to waive the conflict to allow Attorney Dolan to continue to represent him through the plea bargaining process. Attorney Dolan also informed the court that he was going to immediately withdraw as Brown's attorney in his Waterbury case, which he did the next day.

At his next court appearance on July 7, the petitioner requested additional time to consider the state's offer. The state and the court agreed, and the matter was continued until July 20. The court informed Attorney Dolan and the petitioner: "If [the petitioner's] not going to accept [the offer], it's going to be withdrawn. And then if he has to get a new lawyer, I will give him time. But that new lawyer is not going to be able to come in and renegotiate the case. Just so that's clear." Id., July 7, 2010 transcript, p. 4. The petitioner nodded his under-

standing. Id.

The petitioner next appeared in Litchfield Superior Court on July 20. After discussing the matter with the petitioner, Attorney Dolan asked for another continuance to do further investigation. In particular, the petitioner informed Attorney Dolan of a potential exculpatory witness and that the complaining witness may have been arrested. Id., July 20, 2010 transcript, p. 2. The state opposed any continuance to consider the offer and asked that the matter be placed on the firm jury list. The court agreed and noted that all offers were withdrawn. Id., at pp. 2–3. The petitioner then changed his mind, and decided to accept the state's offer. After the petitioner entered a guilty plea under the *Alford* doctrine to attempted sexual assault in the first degree, the court vacated the plea when the petitioner stated during the court's canvass that he was not satisfied with Attorney Dolan. Id., at p. 7. The court placed the case on the firm jury list for September 3. The petitioner then immediately tried to again plead guilty, but the court refused to let him do so. Id., at p. 8.

Evidently, the state and the trial court reconsidered their positions as the petitioner was returned to Litchfield Superior Court on August 10, where he accepted the state's offer and entered his plea as set forth in greater detail previously.[5] The petitioner was then sentenced, consistent with the plea agreement, on September 3.

Throughout the plea negotiations, one issue that was a point of contention was the petitioner's state of mind on the night of the incident. Attorney Dolan argued to Attorney Sonnemann that the petitioner was intoxicated and under the effects of PCP, thereby negating any intent to commit a sexual assault. Attorney Sonnemann was not persuaded because the evidence showed that the petitioner had made advances toward the complaining witness and efforts to get together with her in the days leading up to the assault. In addition, the petitioner faced a number of other charges, including four drug charges, as to which his intoxication or PCP use would not be a defense. Attorney Sonnemann also knew that the petitioner had twelve prior convictions between 1993 and 2009, including three for the sale of narcotics. As a result, on the drug charges alone in Litchfield, the petitioner faced decades of incarceration as a subsequent offender. For all of the reasons, the state was not willing to consider any proposed plea agreement less severe than the final offer the petitioner accepted.

Additional facts will be discussed as necessary.

### III

### DISCUSSION

It is now well established that "[a] criminal defendant is constitutionally entitled to adequate and effective

assistance of counsel at all critical stages of criminal proceedings. *Strickland* v. *Washington*, [466 U.S. 668, 686, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984)]. This right arises under the sixth and fourteenth amendments to the United States constitution and article first, § 8, of the Connecticut constitution." *Copas* v. *Commissioner of Correction*, 234 Conn. 139, 153, 662 A.2d 718 (1995). The United States Supreme Court has recently held that pretrial negotiations implicating the decision whether to plead guilty is a critical stage in criminal proceedings for purposes of the sixth amendment right to the effective assistance of counsel. See *Missouri* v. *Frye*, U.S. , 132 S. Ct. 1399, 1405, 182 L. Ed. 2d 379 (2012); *Lafler* v. *Cooper*, U.S. , 132 S. Ct. 1376, 1384, 182 L. Ed. 2d 398 (2012); *Padilla* v. *Kentucky*, 559 U.S. 356, 373, 130 S. Ct. 1473, 176 L. Ed. 2d 284 (2010). "In today's criminal justice system . . . the negotiation of a plea bargain, rather than the unfolding of a trial, is almost always the critical point for a defendant." *Missouri* v. *Frye*, supra, 1407. Similarly, "[o]ur Supreme Court has recognized that pretrial negotiations implicating the decision of whether to plead guilty is a critical stage, and, therefore, a defendant is entitled to adequate and effective assistance of counsel at this juncture of the criminal proceedings. *Copas* v. *Commissioner of Correction*, [supra, 153]." *Ebron* v. *Commissioner of Correction*, 120 Conn. App. 560, 567, 992 A.2d 1200 (2010), rev'd in part on other grounds, 307 Conn. 342, 53 A.3d 983 (2012), cert. denied sub nom. *Arnone* v. *Ebron*, U.S. , 133 S. Ct. 1726, 185 L. Ed. 2d 802 (2013). The decision to plead guilty is "ordinarily the most important single decision in any criminal case." (Internal quotation marks omitted.) Id., 572. "During plea negotiations defendants are entitled to the effective assistance of competent counsel." (Internal quotation marks omitted.) *Lafler* v. *Cooper*, supra, 1384. "Anything less . . . might deny a defendant effective representation by counsel at the only stage when legal aid and advice would help him." (Internal quotation marks omitted.) *Missouri* v. *Frye*, supra, 1408. "Although this decision [whether to plead guilty] is ultimately made by the defendant, the defendant's attorney must make an informed evaluation of the options and determine which alternative will offer the defendant the most favorable outcome. A defendant relies heavily upon counsel's independent evaluation of the charges and defenses, applicable law, the evidence and the risks and probable outcome of a trial. The right to effective assistance of counsel includes an adequate investigation of the case to determine facts relevant to the merits or to the punishment in the event of conviction." *Copas* v. *Commissioner of Correction*, supra, 154.

To establish his claim of ineffective assistance, the petitioner has the burden to show that "(1) counsel's representation fell below an objective standard of reasonableness, *and* (2) counsel's deficient performance

prejudiced the defense because there was a reasonable probability that the outcome of the proceedings would have been different had it not been for the deficient performance." (Emphasis in original.) *Johnson* v. *Commissioner of Correction*, 285 Conn. 556, 575, 941 A.2d 248 (2008). "The first prong requires a showing that counsel made errors so serious that counsel was not functioning as the counsel guaranteed the defendant by the [s]ixth [a]mendment." (Internal quotation marks omitted.) Id., 576, quoting *Strickland* v. *Washington*, supra, 466 U.S. 687. With respect to the prejudice prong for claims of ineffective assistance when the conviction resulted from a guilty plea, the petitioner must demonstrate "that there is a reasonable probability that, but for counsel's errors, [the defendant] would not have pleaded guilty and would have insisted on going to trial." (Internal quotation marks omitted.) *Johnson* v. *Commissioner of Correction*, supra, 576, quoting *Hill* v. *Lockhart*, 474 U.S. 52, 59, 106 S. Ct. 366, 88 L. Ed. 2d 203 (1985); *Carraway* v. *Commissioner of Correction*, 144 Conn. App. 461, 476, 72 A.3d 426 (2013), cert. granted on other grounds, 312 Conn. 925, 95 A.3d 521 (2014).[6]

When assessing trial counsel's performance, the habeas court is required to "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance . . . ." *Strickland* v. *Washington*, supra, 466 U.S. 689. The United States Supreme Court explained:

"A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy. . . . There are countless ways to provide effective assistance in any given case. Even the best criminal defense attorneys would not defend a particular client in the same way." (Citation omitted; internal quotation marks omitted.) Id.

Applying the *Strickland-Hill* test here, the court finds that the petitioner has failed to meet his burden under either prong of the test as to any of his claims.

The petitioner's first claim is that Attorney Dolan failed to adequately advise him of the elements of the crime to which he pleaded guilty. This claim is without merit. Attorney Dolan testified credibly that he discussed with the petitioner what the state would have to prove on each of the charges he faced. In particular, although he could not remember exactly when, Attor-

ney Dolan discussed the concept of specific and general intent. In fact, Attorney Dolan had discussed that very topic with the petitioner in connection with the earlier sexual assault trial at which Attorney Dolan represented the petitioner. Furthermore, when the petitioner entered his guilty plea on August 10, both he and Attorney Dolan acknowledged to the court that they had discussed the elements of the offense. Given the petitioner's extensive experience with the criminal justice process, both with guilty pleas and trials, his claim now that Attorney Dolan never discussed with him the elements of the crimes with which he was charged is just not credible.

The petitioner's second claim is that Attorney Dolan failed to advise the petitioner as to any defenses or mitigating circumstances. In particular, the petitioner claims that Attorney Dolan failed to advise the petitioner that his intoxication could have negated the requisite intent required for attempted sexual assault in the first degree. In support of this argument, the petitioner presented the testimony of Dr. Johnson-Arbor. Dr. Johnson-Arbor has taught, practiced and written in the field of toxicology. Based on her conversation with the petitioner and a review of his medical records, as well as police reports and witness statements relating to the incident, Dr. Johnson-Arbor opined that at the time he assaulted the sisters, the petitioner had both cocaine and PCP in his system. She further testified that PCP intoxication can cause a person to be dissociated, meaning that his mind does not realize the actions his body is taking. She further opined that the petitioner was in such a dissociative state on the night of the assault and, more likely than not, did not know what he was doing around the time of the assault.

On cross-examination, Dr. Johnson-Arbor acknowledged that she could not say when the dissociative state began. She also acknowledged that periods of lucidity can occur during such a state. Finally, she acknowledged that a person in a dissociative state would not think to provide water as a substitute for urine to avoid testing positive for drugs or alcohol. There was evidence that the petitioner did just that after being arrested.

The petitioner argues that Attorney Dolan was deficient in his performance because he did not retain someone like Dr. Johnson-Arbor. He further argues that had Attorney Dolan done so, the petitioner would not have pleaded guilty to attempted sexual assault in the first degree.

The petitioner has failed to prove either contention. First, given the posture of the case when the petitioner entered his guilty plea, the court cannot say that Attorney Dolan was deficient for not retaining a toxicology expert. The evidence is clear that Attorney Dolan had discussed with the petitioner a possible intoxication

defense. That defense also played a prominent role in Attorney Dolan's negotiations with Attorney Sonnemann. In fact, Attorney Sonnemann made specific reference to the defense when the petitioner entered his guilty plea. Consequently, the petitioner was fully aware that he could have raised such a defense when he pleaded guilty.

The petitioner also knew that it was very unlikely that Attorney Dolan would be his counsel at trial, where such an expert might be needed. The trial court made it clear to the petitioner two months before he entered his guilty plea that Attorney Dolan would likely have to withdraw from the case due to the conflict between the petitioner and Brown. The trial court also told the petitioner that he would be given time to work with a new attorney to prepare for trial. The court cannot say that it was unreasonable for Attorney Dolan not to retain a toxicology expert when he knew he most likely would not be trying the case and another attorney would be.

Second, the court is not persuaded that the lack of a toxicology expert prejudiced the petitioner. Even if he had such an expert, the petitioner knew that the case against him was strong. As Attorney Sonnemann noted, the state had evidence to show that the petitioner had made advances toward the complaining witness. He also knew that Brown was prepared to testify against him and recount details Brown learned from the petitioner. Such evidence would be inconsistent with a defense that the petitioner was so intoxicated that he could not appreciate what he was doing. So would the evidence that the petitioner attempted to provide a false sample for the purpose of a drug test following his arrest. And, as noted previously, Dr. Johnson-Arbor made certain concessions during cross-examination that made her opinion far from definitive. Furthermore, the petitioner knew that he faced four drug charges, as to which the defense of intoxication would provide him no help. In fact, there does not appear to be any defense to those charges.

The evidence also established that the petitioner was highly motivated to plead guilty when he did, and to dispose of his case with his Waterbury case. By resolving both cases at the same time, the petitioner was able to run his sentences concurrently and to maximize the benefit of his pretrial jail credits. Consequently, the petitioner chose to plead guilty in Litchfield despite knowing that he would have to plead guilty to attempted sexual assault in the first degree and register as a sex offender for life. He chose to plead guilty even though the trial court told him that the court would give him time to consult with a new attorney if he chose to go to trial. He did so despite knowing that the complaining witness had recently been arrested and that the arrest could be used to impeach her at trial. Even when offered

the option of filing a motion to set aside his guilty plea because of this new information, the petitioner chose to be sentenced to assure the benefits of his coordinated pleas in Litchfield and Waterbury.

Based on all of the foregoing, the court concludes that there is no reasonable possibility that the petitioner would have made a different decision had Attorney Dolan retained a toxicology expert like Dr. Johnson-Arbor.

The petitioner's third claim is that Attorney Dolan failed to advise him of the evidence the state had to present against him. In particular, the petitioner testified that Attorney Dolan did not provide him copies of all the police reports and witness statements related to his case. The petitioner also argues that Attorney Dolan failed to review with him the physical evidence seized from the scene.

This claim requires little discussion. The petitioner presented none of this material to the court during the trial of this matter. Thus, the court is in no position to determine whether Attorney Dolan's performance was deficient or whether the petitioner was in any way prejudiced. It was the petitioner's burden to prove this claim, and he failed to do so.

The petitioner similarly argues that Attorney Dolan was deficient in not advising him of the witnesses the state would present at trial. There is no evidence to support this claim. Attorney Dolan testified that he told the petitioner that the complainant, her sister and police officers would be witnesses at the criminal trial. The court found Attorney Dolan's testimony to be credible. Furthermore, the petitioner was told by both Attorney Dolan and the trial court that Brown could testify against the petitioner. The petitioner has failed to identify any particular potential witness he was unaware of. Nor has he presented any evidence as to how the knowledge of any particular witness would have affected his decision to plead guilty. The claim is without merit.

The petitioner next argues that Attorney Dolan failed to adequately investigate a defense. This is a rehashing of the petitioner's argument regarding Attorney Dolan's failure to hire a toxicology expert. The court has already addressed this claim. For the reasons previously stated, the petitioner has failed to prove either deficient performance or prejudice.

The petitioner also makes several arguments relating to the manner in which Attorney Dolan advised him regarding his guilty plea. First, he claims that Attorney Dolan advised the petitioner that if he pleaded guilty under the *Alford* doctrine, he could later reopen his case and retry it. The petitioner's testimony was just not credible. Attorney Dolan is an experienced criminal defense attorney. If Attorney Dolan advised the peti-

tioner as claimed, then he purposely deceived him. Yet Attorney Dolan had no motivation to do so. There was no evidence that Attorney Dolan bore any animus toward the petitioner. To the contrary, the petitioner was a repeat client. Nor was Attorney Dolan concerned with trying to avoid a trial. He knew that if the case went to trial, he would almost certainly have to withdraw from the case.

The petitioner's claim is further undermined by the transcript of his plea canvass. Twice during that canvass, the petitioner acknowledged that once he pleaded guilty, there would not be a trial. Respondent's Exh. B, August 10, 2010 transcript, p. 8. He also acknowledged that there would be no appeal from the conviction. Id. The petitioner also acknowledged to the court that he could not come back to court and ask that his plea be vacated. Id. At no point did he ask the court about the advice he claims Attorney Dolan provided. He did not, despite the fact that both his aborted and final plea canvasses show that the petitioner was not reticent about raising any concerns he might have.

Similarly unpersuasive is the petitioner's claim that Attorney Dolan misled him regarding the charge the petitioner would have to plead guilty to. The petitioner claims that he thought the charge he would plead guilty to was assault, not a sexual assault. The petitioner was clearly told on July 20, 2010, that he was being asked to plead guilty to attempted sexual assault in the first degree. When the court vacated his plea after the petitioner said that he was not satisfied with Attorney Dolan, the petitioner made repeated attempts to reinstate his guilty plea to that charge. He then had three weeks to consider his options before returning to court and again pleading guilty to attempted sexual assault in the first degree. There is no question that the petitioner was fully advised and understood the charge he was pleading guilty to.

The petitioner also claims that Attorney Dolan exercised undue influence upon him to plead guilty. In particular, he claims that the potential conflict with Brown was used to coerce the petitioner to plead guilty. The evidence does not support this claim. The evidence showed that Attorney Dolan reviewed Brown's letter with the petitioner when he became aware of it. The evidence was also clear that the petitioner wanted Attorney Dolan to stay on his case despite the conflict. The petitioner signed a waiver confirming that fact and told the court the same thing when he was canvassed on June 8, 2010. The transcript from the hearing that day shows that the petitioner was in no way coerced. He was simply informed by the court of the issues created by the conflict and asked if he wished to waive the conflict for plea negotiations. One month later, on July 7, the court told the petitioner that if he wanted to go to trial, the court would give him time to get a

new lawyer. It is hard to imagine what more Attorney Dolan or the court could have done for the petitioner under the circumstances.

The petitioner's final claim is that Attorney Dolan was deficient in not negotiating a better plea deal by using a toxicology expert to buttress his intoxication defense. Again, there is no evidence to support the petitioner's claim. It is pure speculation that the state would have made a better offer if Attorney Dolan had retained a toxicology expert. To the contrary, Attorney Sonnemann and Attorney Dolan both testified credibly that much of their negotiations centered on such a defense, but that the state gave it little credence. This fact was confirmed by Attorney Sonnemann's comments when the petitioner entered his guilty plea. In the end, the final offer the petitioner accepted was the product of protracted and contentious negotiations, and there was no evidence to suggest that there was any possibility that the petitioner was going to do any better. In fact, Attorney Dolan was able to negotiate away the twenty years of probation to which the petitioner objected and get the incarcerated portion of the sentence close to the six years the petitioner was aiming for. The petitioner has failed to prove either deficient performance or prejudice.

## IV

## CONCLUSION

For the foregoing reasons, the petition is denied.

* Affirmed. *Parker* v. *Commissioner of Correction*, 169 Conn. App. 421,  A.3d  (2016).

[1] See *North Carolina* v. *Alford*, 400 U.S. 25, 37, 91 S. Ct. 160, 27 L. Ed. 2d 162 (1970).

[2] The amended petition also includes a count two, which alleges ineffective assistance of counsel against a second attorney, Thomas Nalband. That count was withdrawn by the petitioner at the beginning of his trial.

[3] Although not mentioned explicitly in the transcript, the court infers, partly from the petitioner's testimony in this matter, that the petitioner was concerned, at least in part, with how his pretrial jail credit would be applied if he was not sentenced out of both courts on the same day. Had he only been sentenced on the Waterbury matter he likely would have lost the benefit of any pretrial confinement credits on the Litchfield matter. At the time of his plea, the petitioner had been held in lieu of bond on both matters for approximately six months. Respondent's Exh. A.

[4] The court received no evidence as to who the intended or actual recipients of the letter were. Although Brown testified about his conversations with the petitioner, he was asked no questions about the letter. The petitioner, though, was able to identify the handwriting on the letter as Brown's. And it is clear that the letter was actually sent, as the testimony established that the state ultimately produced a copy of the letter to Attorney Dolan and he showed it to the petitioner.

[5] The petitioner testified that after the state made its final offer, he asked Attorney Dolan to make one last effort to get the state to reduce its offer to six years of incarceration. Attorney Dolan refused because it would have been fruitless in light of the state's position that its offer was, in fact, final.

[6] The Supreme Court granted certification to appeal from the Appellate Court's decision, "limited to the following issue: 'Did the Appellate Court properly determine that the trial court applied the wrong legal standard in assessing the petitioner's claims?' " The legal standard at issue in *Carraway* is the prejudice prong determination when there is a claim of ineffective assistance of counsel arising from guilty plea cases.