******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

MARK AMBROSE *v.* COMMISSIONER
OF CORRECTION
(AC 38229)

DiPentima, C. J., and Mullins and Foti, Js.

*Argued October 24—officially released December 20, 2016*

(Appeal from Superior Court, judicial district of
Tolland, Fuger, J.)

*Richard H. Stannard III*, assigned counsel, with
whom, on the brief, was *John Drapp III*, assigned coun-
sel, for the appellant (petitioner).

*James M. Ralls*, assistant state's attorney, with
whom, on the brief, were *Matthew C. Gedansky*, state's
attorney, and *David M. Carlucci*, assistant state's attor-
ney, for the appellee (respondent).

*Opinion*

PER CURIAM. The petitioner, Mark Ambrose, appeals following the denial of his petition for certification to appeal from the judgment of the habeas court denying his petition for a writ of habeas corpus. On appeal, he claims that the court (1) abused its discretion by denying his petition for certification to appeal and (2) improperly concluded that the performance of his criminal trial counsel was not deficient. We dismiss the appeal.

The following facts and procedural history are relevant to our discussion. On May 11, 1995, the state charged the petitioner with felony murder in violation of General Statutes § 53a-54 (c) and assault in the first degree in violation of General Statutes § 53a-59 (a) (1). On June 7, 1996, the petitioner appeared before the court, *J. Kaplan, J.*, to enter guilty pleas to these charges.[1] After some discussion, the court accepted the petitioner's guilty pleas. Following the petitioner's conviction, on August 1, 1996, the court imposed a total sentence of sixty years incarceration, from which the petitioner did not appeal.

During the plea proceedings, the prosecutor set forth the following factual bases underlying the charges against the petitioner. "On May 10, 1995, approximately twelve noon, the [petitioner] entered the Gold & Diamond Exchange, which is a jewelry store in the town of Ellington. He entered with the intent to commit robbery therein. . . . Inside the store at that time were the proprietor, Raymond Roy, and a jewelry salesman named Elli Parzivan. After being in the store for some time and after being shown—at his request—several diamond rings, [the petitioner] removed a—small caliber . . . pistol from his person, indicated to the occupants that this was a robbery [and] ordered them to get down behind the jewelry cases."

"[The petitioner] then vaulted the jewelry cases," and "pointed his gun at Mr. Parzivan and shot Mr. Parzivan through the head. The [petitioner] was approximately three to five feet away from Mr. Parzivan when he shot him. [The petitioner] then turned toward Mr. Roy and shot Mr. Roy in the face. Mr. Roy was moving at that time, and although [the petitioner] shot him in the face, he was able to survive his injuries after surgery at Hartford Hospital.

"Mr. Parzivan, however, was taken also to Hartford Hospital and died the following day, on May 11, 1995. The autopsy indicated that the cause of death was a gunshot wound to the head.

"The [petitioner]—after shooting both individuals—then removed several trays of diamond rings from . . . a jewelry case, leaving a latent fingerprint on top of that case. He also removed many loose diamonds from a desk nearby. He put all of these items into a bag and

fled the jewelry store.

"He was chased outside of the store by Mr. Roy, who had armed himself with his own pistol. Mr. Roy then proceeded to discharge approximately seven bullets toward [the petitioner] and the vehicle that [the petitioner] was climbing into. Mr. Roy was able to shoot out the rear windshield as well as the left, rear driver's side window. He also shot [the petitioner] in the elbow.

"[The petitioner], nonetheless, was able to flee the scene, and he was stopped ultimately on Interstate 91 in the town of either Windsor or Bloomfield at exit 36 by the state police. This [was] approximately one-half hour to three-quarters of an hour after the incident itself. [The petitioner] at that time was taken into custody.

"Found inside the vehicle was the pistol which he used, along with the jewelry which had been stolen, and a video camera which he had also removed from the scene. The bullet taken from Mr. Parzivan's head was later matched up to the pistol, which was found inside [the petitioner's] vehicle.

"[The petitioner] was treated for his own injuries at Hartford Hospital and released at about 5 p.m. that same day. He thereafter was transported to [the state police] Troop C [barracks] in Tolland where he gave a several-page inculpatory statement regarding his actions and his involvement in the offenses earlier that day."

In March, 2013, the petitioner commenced the present habeas action. On March 6, 2015, the petitioner filed an amended petition for a writ of habeas corpus. In that petition, he alleged that his criminal trial counsel, Phillip N. Armentano, rendered ineffective assistance of counsel. Specifically, the petitioner argued that Armentano was ineffective for failing (1) to place on the record the state's first plea offer involving a forty year sentence; (2) to argue that the petitioner should be allowed to accept the state's first plea offer; and (3) to argue that the state unlawfully withdrew the first plea offer without allowing the petitioner to accept the offer within the agreed upon time frame in violation of *Santobello* v. *New York*, 404 U.S. 257, 92 S. Ct. 495, 30 L. Ed. 2d 427 (1971).[2] Following a trial held on July 2, 2015, the habeas court, *Fuger, J.*, denied the petition for a writ of habeas corpus and subsequently denied the petition for certification to appeal. This appeal followed.

We first set forth the standard of review we apply to a claim that the habeas court abused its discretion by denying a petition for certification to appeal from the judgment denying a petition for a writ of habeas corpus. See *Parker* v. *Commissioner of Correction*, 169 Conn. App. 421, 422,     A.3d     (2016). "Faced with a habeas court's denial of a petition for certification to appeal, a petitioner can obtain appellate review of the dismissal

of his petition for habeas corpus only by satisfying the two-pronged test enunciated by our Supreme Court in *Simms* v. *Warden*, 229 Conn. 178, 640 A.2d 601 (1994), and adopted in *Simms* v. *Warden*, 230 Conn. 608, 612, 646 A.2d 126 (1994). First, [the petitioner] must demonstrate that the denial of his petition for certification constituted an abuse of discretion. . . . Second, if the petitioner can show an abuse of discretion, he must then prove that the decision of the habeas court should be reversed on the merits." (Internal quotation marks omitted.) *Melendez* v. *Commissioner of Correction*, 151 Conn. App. 351, 357, 95 A.3d 551, cert. denied, 314 Conn. 914, 100 A.3d 405 (2014). To prove that the denial of his petition for certification to appeal constituted an abuse of discretion, "the petitioner must demonstrate that the [resolution of the underlying claim involves issues that] are debatable among jurists of reason; that a court could resolve the issues [in a different manner]; or that the questions are adequate to deserve encouragement to proceed further." (Internal quotation marks omitted.) *Moye* v. *Commissioner of Correction*, 168 Conn. App. 207, 214, 145 A.3d 362 (2016).

After careful review of the record and the briefs, the arguments of the parties, and the habeas court's oral decision, we conclude that the petitioner has failed to prove that the court abused its discretion in denying the petition for certification to appeal.

The appeal is dismissed.

[1] The petitioner alleges that the guilty plea he entered was on the second plea offer the state made. According to the petitioner, the state's second plea offer required him to plead guilty by substitute information to one count of felony murder in violation of § 53a-54 (c) and one count of assault in the first degree in violation of § 53a-59 (a) (1). In exchange for the petitioner's guilty plea, the state would recommend that the court impose a sentence of fifty years to serve for the offense of felony murder and a consecutive ten years to serve for the offense of assault in the first degree, for a total effective sentence of sixty years to serve. The petitioner contends that, under the first plea offer, he would have pleaded guilty to the same offenses as in the state's second plea offer, but the state would recommend that the court impose a sentence of forty years to serve for the offense of felony murder and twenty years to serve concurrently for the offense of assault in the first degree, for a total effective sentence of forty years to serve.

[2] In *Santobello* v. *New York*, supra, 404 U.S. 262, the United States Supreme Court stated: "[W]hen a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled."